MAKAR, J.
Summer jai alai permits are the focus of this appeal. At issue is whether the Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering (“Division”) erred in denying the application of West Flagler Associates, Ltd. (“West Flagler”), seeking a permit to conduct summer jai alai under section 550.0745(1), Florida Statutes, which allows for the issuance of new permits under defined circumstances. Because the basis for the Division’s denial was based on-an insupportable reading of the statute, we reverse.
I.
Jai alai is a daring sport of Spanish origin involving rock-hard goat-skin covered rubber balls (pelotas) hurled at speeds well over 100 mph that are bounced off walls forming three-sided spaces known as courts or frontons. Highly-skilled teams compete by using hand basket gloves (cestas) to serve, catch, and throw the pelota with the goal of causing their opponents to commit errors by, for example, failing to catch it on the fly or after its first bounce. Jai alai is popular in Latin American countries and was first introduced in America at the 1904 World’s Fair in St. Louis, Missouri. In 1924, it made its first commercial appearance in Florida at a fronton in Miami and has since been operated at various locations around the state as an alternative to other sports on which gambling is permitted, such as horse racing and greyhound racing. See Paul S. George, Passage to the New Eden: Tourism in Miami from Flagler to Everest G. Sewell, 60 Fla. Hist. Q. 440, 455, 459 (April 1981). Florida is by far the state with the greatest interest in, and commercial development of jai alai frontons, though interest has declined in recent years due to consumer interest in other forms of gambling. See generally Jai alai, Wikipedia, http:// en.wikipedia.org/wiki/JaLalai (last visited April 23, 2014).
*421 Not long after its inception in Florida, jai alai became subject to the State’s gaming laws that regulate pari-mutuel activities. Those laws have since evolved, one of which is the 1992 enactment at issue entitled “Conversion of pari-mutuel permit to summer jai alai permit” that is codified as section 550.0745, Florida Statutes. Ch. 92-348, § 14. Laws of Florida. Section 550.0745(1) states that the owner or operator of a pari-mutuel permit (one authorized to conduct pari-mutuel pools on exhibition sports in a county having five or more such permits) who has the lowest handle (is the lowest performing economically) for “the 2 consecutive years next prior to filing an application” may apply to convert its permit to a summer jai alai permit. Two of the apparent purposes of this amendment were to help the lowest performing permit holder and to increase state tax revenues.
Hialeah Park, which operates a quarter horse permit in Miami-Dade County, had the lowest handle among the (more than five) qualifying permit holders in that county for the 2010-11 and 2011-12 state fiscal years. Though it was eligible to convert its quarter horse permit to a summer jai alai permit, Hialeah Park declined to do so. This triggered the provisions in section 550.0745(1), which state: “If a per-mittee who is eligible under this section to convert a permit declines to convert, a new permit is hereby made available in that permittee’s county to conduct summer jai alai games as provided by this section, notwithstanding mileage and permit ratification requirements.” § 550.0745(1), Fla. Stat. Because Hialeah Park turned down its statutory right to convert its quarter horse permit to a summer jai alai permit, West Flagler sought the “new permit” made available in Miami-Dade County under this portion of the statute.
The Division denied West Flagler’s application. Its reasoning was that because it had issued a summer jai alai permit the previous year (also to West Flagler) based on data from the 2009-10 and 2010-11 state fiscal years (Hialeah Park had the lowest handle for these two fiscal years but declined to convert), it could not use the 2010-11 data again — this time in conjunction with 2011-12 data — to issue a new permit for the most recent two-year period. Under the Division’s interpretation, the “statute clearly requires that the lowest mutuel play must come from the same permitholder for 2 consecutive years prior to filing an application under the section.” Thus, once a fiscal year’s data is used to grant a summer jai alai permit, that same fiscal year data may not be used in granting another summer jai alai permit. In essence, the Division reads the statute as allowing one summer jai alai permit to be made available at most every two years. West Flagler unsuccessfully challenged the Division’s interpretation of the statute, and now appeals from the Division’s final order denying its application.
II.
We begin by recognizing the “well established proposition that an administrative construction of a statute given by those charged with its enforcement and interpretation is entitled to great weight, and the courts will not depart from such a construction unless it is clearly erroneous or unreasonable.” Summersport Enters., Ltd. v. Pari-Mutuel Comm’n, 493 So.2d 1085, 1087 (Fla. 1st DCA 1986). On appeal, West Flagler seeks to overcome this proposition, arguing that the “plain and unambiguous language of Section 550.0745(1) requires the Division to issue a new summer jai alai permit each and every year if the lowest handling permitholder declines to convert its permit.” It relies upon principles of strict statutory construction, but as a fallback points to some *422 limited legislative history that the statute was intended to be open ended.
We need not consider legislative history because, try as we might, we cannot read the language of the statute as the Division has implemented it in this case. The statute plainly provides that the permitholder with the lowest handle for “the 2 consecutive years next prior to filing an application” may apply for a summer jai alai permit, and, if it declines to do so, a “new permit” is made available. § 550.0754(1), Fla. Stat. This statutory language envisions a rolling two-year period rather than the at-most-every-other-year approach the Division urges. The word “consecutive” typically means “following continuously” or “following one’s or its predecessor in uninterrupted sequence.” The New Shorter Oxford English Dictionary, 484 (1993). The Division’s interpretation would create a discontinuity or interruption in the otherwise “consecutive years” approach that the statute establishes. We would have to interpret “consecutive” other than by its ordinary and plain meaning to reach this result, effectively rewriting it.
Likewise, the phrase “next prior”— though clumsy and seemingly contradictory — has been consistently used to mean the “immediately prior” instances. See Bryan A. Garner, A Dictionary of Modern Legal Usage, 588 (2d ed. 1995) (noting that phrase “next preceding” is “an awkward phrase, arguably illogical, that commonly appears in drafting.”).[1] Though not commonly used today (for good reason), the phrase appears in other Florida Statutes, and generally older caselaw with this same meaning. See, e.g., § 475.17(1)(b), Fla. Stat. (2014) (“An application may be disapproved if the applicant has acted or attempted to act, or has held herself or himself out as entitled to act, during the period of 1 year next prior to the filing of the application ....”); § 731.19, Fla. Stat. (Supp.1941), repealed by ch. 74-106, § 3, Laws of Fla. (“[B]y his will duly executed immediately next prior to such last will and more than six months before his death .... ”); Curley v. Curley, 144 Fla. 728, 198 So. 584, 586 (1940) (wife had burden “to show that she had-resided in Florida for a period of ninety days next prior to the date of filing the suit for divorce ... ”); Ringling v. Ringling, 117 Fla. 423, 158 So. 125, 126 (1934) (“[F]or more than sixty days next prior to the date of the filing of such affidavit ....”). The use of this phrase dovetails with the term “consecutive” to make evident that a continuous, rather than discontinuous, approach was intended.
The Division expressed a concern at oral argument that allowing a new summer jai alai permit to be issued each year based on a rolling two-consecutive-years approach would lead to a proliferation of summer jai alai permits. If the legislature intended to allow a new permit, at most, every other year it could have written the statute to say so. And if it deems it a good policy to have this limitation, it can implement it legislatively; but we cannot interpret the language of the existing statute to achieve this result.
III.
Because the Division’s interpretation of section 550.0745(1) is not supportable, we reverse its final order with directions to reinstate West Flagler’s application for the new summer jai alai permit at issue.
REVERSED.
*423 THOMAS, J., concurs.
MARSTILLER, J., concurs in part, dissents in part, with opinion.

. Professor Garner provides this example: "Anything in the next preceding paragraph of this contract [read in the paragraph immediately preceding this one ] notwithstanding ...."Id.